# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DARYL BLYDEN,** | ) CASE NO. 7:15CV00042 |
| **Plaintiff,** | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| **HAROLD W. CLARKE, ET AL.,** | ) By: Norman K. Moon |
| | ) United States District Judge |
| **Defendant(s).** | ) |

Daryl Blyden, an inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* Blyden alleges that prison officials substantially burdened his Rastafarian religious practice of group worship; deprived him without due process of a protected interest in group worship and vocational programs; treated him differently than general population inmates with regard to these group activities; and failed to provide him with adequate access to legal materials. For reasons more fully explained in my opinion entered today in a similar case, *Peters v. Clarke*, No. 7:14CV00598, I conclude that defendants' motion for summary judgment must be granted.

## I. BACKGROUND

The relevant facts are undisputed and are outlined in greater detail in the *Peters* opinion, a copy of which will be provided to the parties in this action. Virginia Department of Corrections ("VDOC") grooming policy, Operating Procedure ("OP") 864.1 (docket no. 21-1), establishes uniform personal grooming standards for offenders to facilitate the identification of offenders and to promote safety, security, and sanitation. Specifically, OP 864.1 requires male inmates to keep their hair one inch or shorter in thickness or depth and prohibits certain hair

styles that "could conceal contraband; promote identification with gangs; create a health, hygiene, or sanitation hazard; or could significantly compromise the ability to identify an offender." OP 864.1(IV)(C)(2). The policy states: "Failure to comply [with OP 864.1 grooming standards] could pose a security risk, health hazard, or identification difficulties. Offenders who refuse to comply, or who chronically violate offender grooming standards, will be managed as potential risks to facility order and safety." OP 864.1(IV)(G)(4). Noncompliant inmates receive a specialty security classification of Level H and remain in segregation until they comply with the grooming requirements. OP 830.2(IV)(A)(1);[1] OP 864.1(IV)(H).

If a Level H inmate meets certain criteria, he may be moved to the 864.1 Violators Housing Unit ("VHU"), currently located at Wallens Ridge State Prison. *See* OP 864.1(IV)(I). As set forth in local OP 864A(IV)(A), the VDOC maintains the VHU pod in order to manage safely and "distinctively" inmates who are noncompliant with the grooming standards, and to encourage grooming compliance, while also allowing such inmates participation in groups and privileges not otherwise available to them in segregation so as to improve their quality of life. As reflected by the distinctive Level H security level assigned to its residents, the VHU is not a general population pod, but offers more activities and privileges than are available to segregation inmates. VHU inmates wear distinctively colored jumpsuits and cannot be housed with or be near non-VHU residents, with the exception of the school tutor. VHU residents have access to various educational programs, such as Anger Management, Thinking for a Change, and the Department of Correctional Education ("DCE") programming. They may practice their religious beliefs in their cells or with other offenders in the pod and may meet with the chaplain. Since

---

[1] *See gen.* VDOC Operating Procedure 830.2, "Security Classification Levels," http://vadoc.virginia.gov/about/procedures/documents/800/830-2.pdf (last visited August 20, 2015).

2

January 16, 2015, inmates in the VHU pod may also attend a group religious service on Fridays conducted in the school area of the prison.

Blyden states that he was born and raised in the Rastafarian religion in the Virgin Islands.[2] While in prison there in the "Golden Grove" correctional facility, he always attended group Rastafarian religious services. He also had a job in the prison law library, which allowed him to work every day on his Virgin Islands criminal case, with help from other inmate library workers. In addition, Blyden participated in unspecified "vocational programs" at Golden Grove.

In April 2013, Blyden was transferred to the custody of the Virginia Department of Corrections ("VDOC") pursuant to a contract between the VDOC and its Virgin Islands counterpart. When he first arrived at Red Onion State Prison, officials advised him that to be in general population, he would need to comply with the grooming policies in OP 864.1. Based on his Rastafarian beliefs, Blyden refused to cut his hair. Officials charged him with a disciplinary infraction and placed him in a segregation unit, where he could not participate in group activities with other inmates.

In June 2014, Blyden was transferred to Wallens Ridge, and after a few weeks in segregation there, was placed in the VHU on June 26, 2014. Blyden soon discovered that vocational classes and a group religious service for Rastafarians were available to general population inmates at Wallens Ridge, but VHU inmates could not participate, because they could not come in contact with non-VHU inmates. Blyden states, however, that the Rastafarian

---

[2] Blyden's submissions do not offer any specific information about his Rastafarian beliefs. Information online indicates: "Rastafari is an Abrahamic new religious movement that accepts Haile Selassie I, the Ethiopian emperor from 1930 to 1974 as God incarnate and the Messiah who will deliver believers to the Promised Land, identified by Rastas as Ethiopia. It has its roots in black-empowerment and back-to-Africa movements." Catherine Beyer, *Rastafari*, http://altreligion.about.com/od/alternativereligionsaz/a/rastafari.htm (last visited August 20, 2015).

inmates in the VHU would go over to a room in the school building and talk amongst themselves about their religious beliefs. (Blyden Affid. ¶¶ 10-11, docket no. 28-1.)

In September 2014, Blyden filed an informal complaint and grievance about his desire to participate in the general population's group Rastafarian religious services. This grievance was rejected—because he did not attach evidence of trying to resolve the matter informally as required by the grievance procedures, and because of his OP 864.1 violator status. This rejection was upheld on appeal. After officials arranged for regularly scheduled group religious meetings for VHU inmates, beginning in January 2015, Blyden failed to attend many of these sessions, although he is approved to do so. Blyden complains that officials have not provided an "outside facilit[ator]/instructor to guide [the inmates] through while studying or practicing" their religion and "[t]here are no books, reading materials, or literature of any kind dealing with Rastafarian religion."[3] (Amend. Compl. Affid. ¶ 3, 7, docket no. 28-1.)

By policy, VDOC facilities are to designate space for religious activities and, if possible, make a facility chaplain or volunteer chaplain available to assist inmates of all recognized religious faiths. *See* OP 841.3 (docket no. 37-1.) If no religious leader for a recognized faith group is available, the chaplain should try to assist inmates in that group in contacting a person with appropriate credentials. The chaplain also facilitates donations of religious items for inmates of a particular faith to use. The programs manager for Wallens Ridge states that the chaplain there has unsuccessfully attempted to locate a volunteer religious leader and religious literature for the Rastafarian inmate group services.

In August 2014, Blyden filed an informal complaint, stating his desire to participate in vocational classes. Advised that a "GED" diploma was a prerequisite for vocational classes,

---

[3] Blyden asserts that "all other religion that is practice in VDOC are fully equipped and have adequate services (i.e. [M]uslim, have the[ir] services, Ramada[n] and Christians have the[ir] servies at all times.[)]." (Amend. Compl. ¶ 5, docket no. 28.)

4

Blyden submitted his GED to the records office. In September 2014, he filed a regular grievance, complaining that he had not received a response about "vocational" classes. This grievance was rejected because he did not attach evidence of trying to resolve the matter informally and because of his OP 864.1 violator status, and the rejection was upheld on appeal.[4]

On December 9, 2014, Blyden filed a regular grievance complaining about his inability to physically access the Wallens Ridge law library to obtain Virgin Islands materials for use in pursuing unspecified litigation about his criminal conviction. The grievance was rejected as a request for services. The responding official also reminded Blyden that he could file a request to the intrastate compact coordinator from his home state for the Virgin Islands legal materials he needed.[5] On appeal of the intake decision, Blyden complained that the coordinator's responses were slow and sometimes inaccurate, sometimes making it difficult for a litigant to meet court deadlines. The intake decision was upheld on appeal.

Defendants offer evidence that although inmates at Wallens Ridge cannot physically go to the law library, they can request legal materials, which are photocopied by inmate law clerks and delivered to the requesting inmate's cell. The law library is equipped for computerized legal research on a Westlaw database that is updated every three months. Inmates may also request a meeting with the institutional attorney, who can assist them in obtaining Virgin Islands forms or rules through Westlaw.

---

[4] Blyden's grievances and his § 1983 complaint do not specify any particular vocational program in which he wished to participate that was not available to VHU inmates.

[5] (*See* Compl. Ex. L, *Correctional Services Contract*, Art. 14, docket no. 2) ("To the extent that a VDOC institution, in which a Virgin Island Inmate is incarcerated, does not have all necessary legal research material pertaining to the Virgin Islands and the federal courts within the Third Circuit, VIDJ shall establish appropriate policies and take appropriate action to make such material available to the subject Virgin Island Inmate . . . and VDOC shall have no responsibility for providing such materials.")

Blyden filed this § 1983 complaint on December 29, 2014, against numerous supervisory officials at Wallens Ridge.[6] The court also granted a motion to amend, adding a claim regarding the adequacy of VHU Rastafarian group services and a motion to amend his evidence and arguments in support of his previously asserted claims. Liberally construed, Blyden's original complaint as amended alleges the following claims for relief:

1. Blyden has a liberty or property interest in being provided access to vocational programs while in prison and a liberty interest in participating in group religious services, and defendants deprived him of these interests without due process;

2. Defendants failed to allow Blyden to participate in group religious services and vocational programs because of his VHU status, while providing such programs to other general population inmates, in violation of the Equal Protection Clause.

3. Defendants denied Blyden the opportunity to participate in separate Rastafarian group services because of his VHU status, in violation of his rights under the First Amendment and RLUIPA.

4. Defendants denied Blyden eligibility to be transferred to a lower security prison, an option available to non-VHU inmates, in violation of the Equal Protection Clause;

5. Rastafarian services provided for VHU inmates since January 16, 2015, are lawfully inadequate, because of defendants' "lack of services, instruments, books, class instructor, etc." in violation of Blyden's free exercise rights.

6. Defendants denied Blyden access to an adequate law library containing Virgin Islands legal resources necessary for him to vindicate his right to access the court to challenge his criminal conviction; in violation of the First Amendment and the Due Process Clause;

7. Supervisory officials failed to correct the violations alleged in Claims 1 through 5.

Blyden seeks compensatory damages, as well as declaratory and injunctive relief ordering his removal from the VDOC.

---

[6] The defendants are: Harold W. Clarke, John Jabe, David Robinson, Gregory Holloway, J. C. Combs, Rebecca Young, Quincy Reynolds, Thomas Jones, B. S. Hyder, Brenda Ravizee, and Robert Bivens, originally identified as John Doe.

6

Defendants have filed a motion for summary judgment and a supplemental motion for summary judgment. Blyden has responded to their motions (*see* docket nos. 32, 37, 42), making the matter ripe for disposition.[7]

## II. DISCUSSION

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### B. No Personal Involvement

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). In his complaint, Blyden does not affirmatively state conduct or omissions by each of the defendants that violated his constitutional rights. *See, e.g., Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir.

---

[7] By order entered June 29, 2015, this action was reassigned to me for administrative reasons. Blyden has moved to alter or amend the order of reassignment. However, he fails to identify any respect in which he was prejudiced by the reassignment or any ground on which the challenged order should be amended. Accordingly, I will deny his motion.

7

1995). Moreover, no supervisory official can be held automatically liable for violations possibly committed by his or her subordinate employees; the doctrine of *respondeat superior* does not apply in § 1983 cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, Blyden fails to state facts on which he could hold any defendant liable, personally or in a supervisory capacity, for violating his rights.[8] On these grounds, defendants are entitled to summary judgment. In any event, defendants are also entitled to summary judgment on the merits of the claims.

C. No § 1983 Due Process Violation

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Phiphus*, 435 U.S. 247, 259 (1978).

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). More specifically, he must (a) "point to a [state or federal] law or policy providing him with an expectation of avoiding the conditions of his confinement," and (b) "demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life," *id.* at 252, or "will inevitably affect the duration" of his

---

[8] Blyden apparently seeks to hold Defendants Ravizee, Hyder, and Bivens liable under § 1983 because he was dissatisfied with their responses to his grievances and appeals. Merely responding to an inmate's administrative remedies does not implicate any constitutionally protected right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that prisoners do not have a constitutional right to participate in grievance procedures); *Brown v. Va. Dep't Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing *Adams,* stating that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation"). Moreover, Blyden's grievances seeking participation in general population groups were rejected because he had failed to comply with the established grievance procedures; these procedural rejections present, as an alternative ground for dismissal of his claims, his failure to properly exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (holding that to meet exhaustion requirement of § 1997e(a), grievant must comply with all "critical procedural rules" of prison's grievance system, including filing deadlines).

8

Case 7:15-cv-00042-NKM-RSB   Document 44   Filed 08/26/15   Page 8 of 17   Pageid#: 424

confinement. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). "[W]hen a state policy expressly and unambiguously disclaims a particular expectation, an inmate cannot allege a liberty interest in that expectation." *Prieto*, 780 F.3d at 252.

Blyden argues that he has a protected liberty or property interest under Virgin Islands law, 5 V.I. Code § 4503(c),[9] in being provided access to vocational programs while in prison,[10] and a protected interest under the First Amendment of the Constitution in participating in group religious services while in prison. I conclude, however, that even if an inmate could prove some "expectations" arising under these provisions while assigned to the VDOC general population,[11] any such expectations are trumped by the VDOC grooming policy. OP 864.1 expressly provides that *any* inmate who fails to comply with the grooming policy will be classified as Security Level H and be housed in segregation until he complies. Blyden admits that he has not complied with the hair length requirements of OP 864.1. Thus, he cannot claim an expectation or a state-created liberty interest in participating in all programs allowed to inmates in less-restrictive security classifications. *Prieto*, 780 F.3d at 252. Accordingly, his § 1983 due process claims

---

[9] Section 4503(c) provides that Virgin Islands prison administrators, before transferring inmates to other states, "shall ascertain and insure the availability of educational *or* vocational programs . . . for the purpose of enabling such inmates . . . to gain marketable skills" (emphasis added). It is undisputed that VHU inmates may participate in educational programming through the DCE, and Blyden has been placed on a waiting list to do so.

[10] In relation to his due process claims, Blyden also references the contract by which the Virgin Islands correctional department arranged to confine him in a VDOC prison. Apparently, Blyden believes that under Virginia contract law, he is intended as a third-party beneficiary of this contract and as such, he has an enforceable right to the type of programs mentioned in it. The contract itself excludes any such claim. (*See* Compl. Ex. L, *Correctional Services Contract*, Art. 22) ("[T]his Contract shall not be construed to bestow any legal rights upon any virgin Islands Inmate or VDOC Inmate.") Accordingly, I will dismiss Blyden's attempted beneficiary claim without prejudice as frivolous. *See* 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal of prisoner's claim against an officer of a governmental entity if court finds claim to "frivolous . . . .").

[11] The United States Supreme Court has made it clear that changes in prisoners' classifications or confinement conditions that trigger constitutional due process protections will be rare. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224, 228 (1976) ("[W]e cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause" by its own force; and whatever "expectation the prisoner may have [under state regulations to certain conditions of confinement are] too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all").

9

regarding his inability to attend such group programs under his current circumstances fails on the first prong of the due process analysis.[12] Therefore, I will grant defendants' motion for summary judgment as to Blyden's due process claims.

## D. No Equal Protection Problem

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Courts have interpreted this clause as commanding that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To survive summary judgment, Blyden must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Disparate treatment of similarly situated prisoners "passes muster so long as [it] is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Blyden's equal protection claims regarding group religious activities, vocational classes, and eligibility for a lower security transfer fail on the first facet of this analysis. Because Blyden is not in compliance with OP 864.1, he has a Security Level H.[13] This classification sets him apart from inmates who are compliant with the grooming policy and can be classified to general population security levels and transferred to lower security level institutions. Because such

---

[12] I also find that Blyden fails to demonstrate how VHU policies against group activity participation with general population inmates have placed any atypical hardship on him, as required to state a due process claim. *Sandin*, 515 U.S. at 484. He admits that he can participate in group religious services with other Rastafarians and that he enjoys most of the same privileges allowed to general population inmates and that he can enroll in educational programs in the VHU.

[13] Blyden repeatedly asserts that he is a general population inmate and should have all the accompanying privileges. Under Virginia's classification policy, however, his assertion is simply not true; OP 864.1 violators receive a specialty security Level H assignment, not a general population assignment.

10

inmates are not similarly situated to Blyden and other OP 864.1 violators, officials may treat the two groups differently without offending equal protection principles.

In any event, it is evident that VHU placement at Wallens Ridge is reasonably related to VDOC's stated and legitimate objectives: to safely manage the increased security risks and costs OP 864.1 violators present by separating them at a secure facility, but also improving quality of life for long-term violators by allowing them many privileges not otherwise available to them in segregation status. In the VHU, violators have no opportunity to obtain contraband from general population inmates to hide in their hair, thus minimizing both the risks concealed contraband presents and the time required for officials to search for it. At the same time, the separation imposed on OP864.1 violators may encourage violators, as well as other inmates, to comply with grooming standards and eliminate the risks and costs associated with long hair and certain hair styles.[14]

Because Blyden is not similarly situated to non-VHU inmates and the challenged VHU policies he challenges are reasonably related to legitimate penological interests, *Morrison*, 239 F.3d at 654, Blyden's equal protection claims fail.[15] Accordingly, I will grant defendants' motion for summary judgment as to these claims.

---

[14] *See, e.g., McRae v. Johnson*, 261 F. App'x 554 (4th Cir. 2008) (citing *Ragland v. Angelone*, 420 F.Supp.2d 507, 512 (W.D.Va.2006) (Turk, J.) (citing other cases), *aff'd*, *Ragland v. Powell*, 193 F. App'x 218 (4th Cir. 2006) (unpublished), *cert. denied*, *Ragland v. Powell*, 127 S. Ct. 1877 (March 26, 2007).

[15] Blyden offers evidence that VDOC officials settled a similar § 1983 and RLUIPA lawsuit with another inmate by sending him back to the Virgin Islands in exchange for his agreement to drop the lawsuit. This information has no bearing on the validity of Blyden's claims or defendants' motion for summary judgment. Blyden could have pursued a similar settlement with defendants if he so wished. Moreover, because he fails to demonstrate that he is similarly situated to the plaintiff in the settled case in all relevant respects (including the seriousness of his crime or his prison disciplinary record), I find no equal protection issue here.

E.  No Free Exercise or RLUIPA Claim

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).  A federal statute now provides more direct protection of prisoners' religious exercise:  "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (citing 42 U.S.C. § 2000cc-1(a)).  A claim under the First Amendment or RLUIPA requires the inmate to prove a substantial burden on a practice "sincerely based on a religious belief." *Holt v. Hobbs*, __U.S. __, 135 S. Ct. 853, 862 (2015) (RLUIPA); *O'Lone*, *supra* (First Amendment).  "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

Blyden fails to show that any sincere religious belief has been substantially burdened by VHU policies against allowing VHU inmates to join Rastafarian group services with non-VHU inmates.  First, Blyden fails to state facts showing that this VHU separation policy implicates his religious exercise.  Blyden states that he attended Rastafarian services in the Virgin Islands, but does not cite any particular Rastafarian tenet on which his desire for group worship is based or explain what role, if any, group worship plays in his personal practice of the Rastafarian faith.  Second, Blyden does not demonstrate that the separation policy has substantially burdened his ability to meet with other Rastafarian believers.  He admits that even before Wallens Ridge

officials scheduled weekly Rastafarian group services for VHU inmates, he and others VHU inmates of his faith met together to talk about religious matters. Moreover, he does not dispute defendants' evidence that he has not attended many of the VHU Rastafarian group services held since January 2015. Third, Blyden offers no evidence that the Rastafarian group services available to him in the VHU, before or since January 2015, have pressured him in any way to modify his behavior so as to violate his beliefs. For the stated reasons, I conclude that Blyden has failed to show any respect in which VHU separation policy substantially burdened any religious belief in worshiping with like believers so as to violate his rights under the First Amendment or RLUIPA. Therefore, I will grant defendants' motion for summary judgment as to these claims.[16]

Blyden also brings a separate claim that the nature of the now-available VHU Rastafarian group services, devoid of any spiritual leader or religious reading materials, somehow violates his free exercise and due process rights. He first complains that defendants' failure to provide these items violates VDOC policies about accommodation of inmates' religious practices. An allegation that officials did not follow their own policies, however, does not state a constitutional claim. *See e.g., Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000). Similarly, violations of prison operating procedures do not implicate federal due process protections. *See Riccio v. County of Fairfax, VA.*, 907 F.2d 1459, 1469 (4th Cir. 1990).

---

[16] Moreover, even if Blyden could show that temporary lack of access to separate group worship services substantially burdened that aspect of his religious practice, he has no claim for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277,___, 131 S. Ct. 1651, 1658-59 (2011); *Rendleman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009). For different reasons, he also has no claim for monetary damages under the First Amendment. Even before he achieved access to group worship services in the VHU pod, Blyden could practice his beliefs in other ways, by wearing his hair uncut and worshiping in his cell, and VHU policy is reasonably related to prison interests in maintaining security and limiting staffing costs and efforts. *See O'Lone*, 482 U.S. at 350-52 (applying four-factor analysis of *Turner v. Safely*, 482 U.S. 78 (1987)). Furthermore, as it is undisputed that VHU inmates now have separate worship services, Blyden's demands for injunctive relief on these claims is moot. *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (finding that restoration of plaintiff's visitation privileges rendered moot his request for injunctive relief to order that those privileges be restored).

13

Moreover, defendants' evidence establishes that VDOC policy does not require a prison to purchase religious materials or hire religious clerics for inmates' religious practices. Rather, policy provides that the chaplain will assist with donations of religious items from outside parties and with scheduling volunteer religious leaders for inmates' religious services. *See, e.g.,* OP 841.3(IV)(A). Blyden does not identify any religious text necessary to his Rastafarian worship or how it might be obtained through donation, nor does he offer any evidence that Rastafarian leaders are available in the Wallens Ridge area to volunteer for inmate services.

Most importantly, however, Blyden does not produce enough evidence about Rastafarian group worship or his personal religious belief in such a practice for the court "to evaluate the degree to which" the available VHU group services have "impaired" his religious exercise. *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012). At a minimum, a plaintiff bringing a free exercise claim must state facts showing that the challenged policy "compromises his beliefs" in some particular way. *Id.* (noting that a policy does not substantially burden an inmate's religious exercise simply because it requires him to observe the practice "differently than he otherwise would have"). A policy "that makes the 'religious exercise more expensive or difficult,' but does not pressure the adherent" to modify his behavior and to violate his beliefs, cannot substantially burden the plaintiff's religious exercise. *Marron v. Miller*, No. 7:13cv338, 2014 WL 2879745, at *2 (W.D. Va. June 24, 2014) (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007)). Blyden has simply offered no facts showing that the absence of a spiritual leader or other religious accoutrements has pressured him into modifying his Rastafarian beliefs. Thus, he has not shown how the current VHU Rastafarian group services substantially burden his religious practice so as to violate his

14

rights under the First Amendment.[17]  Accordingly, I will grant defendants' motion for summary judgment as this claim.

F.  Law Library Complaints

Defendants argue that Blyden's claims alleging the inadequacy of the Wallens Ridge law library and his access to Virgin Islands legal materials must be dismissed, because he failed to exhaust administrative remedies on these topics before filing this lawsuit.  Blyden asserts that the importance of his constitutional right to access the courts must be vindicated, regardless of his failure to properly complete the Wallens Ridge grievance procedures.

The Prison Litigation Reform Act provides in 42 U.S.C. § 1997e(a) that a prisoner cannot *bring* a civil action concerning prison conditions until he has first exhausted available administrative remedies.[18]  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies.  *Id.*  Failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar an inmate's § 1983 action.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

An inmate in the Virginia Department of Corrections ("VDOC") meets the § 1997e(a) requirement by pursuing his claim through each level of the VDOC's regular grievance procedure, including available appeals.  OP 866.1 (docket no. 25-2.)  First, the inmate must

---

[17]  For the same reasons, Blyden has not shown that the group services violate his rights under RLUIPA.

[18]  "[T]he language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that exhaustion may occur."  *Carpenter v. Hercules*, No. 3:10CV241-HEH, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (quoting *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003)).

15

attempt to resolve his complaint informally with staff, typically by filing an informal complaint form, which prison staff must address within fifteen days from receipt. Then, the inmate initiates a regular grievance by submitting the grievance form and attached informal complaint within thirty days of the events at issue. If the responding official determines the grievance to be "unfounded" at Level I, the inmate may appeal that holding to Level II, the regional administrator, and in some cases, to Level III. A regular grievance rejected at intake (for procedural inadequacies, such as being untimely filed or as a request for services inappropriately filed as a grievance) is promptly returned to the inmate. He may appeal that intake decision, or he may correct the reason for the rejection and resubmit his regular grievance. To satisfy the exhaustion requirement, the inmate must submit a procedurally acceptable regular grievance with the appropriate informal complaint attached, and appeal it through all available appeal levels.

It is undisputed that Blyden failed to exhaust available administrative remedies about his problems with the Wallens Ridge law library. His regular grievance about library matters was rejected as a request for services. Rather than filing a request for services, however, as the intake officer directed, Blyden appealed the intake decision, which was upheld. He did not submit a procedurally acceptable regular grievance on the issue or appeal it through all available levels of review. Thus, he failed to properly exhaust the available administrative remedies, and his law library claims are barred under § 1997e(a) from review by this court. *Woodford*, 548 U.S. at 90.

16

Case 7:15-cv-00042-NKM-RSB   Document 44   Filed 08/26/15   Page 16 of 17   Pageid#: 432

Therefore, I will grant defendants' motion for summary judgment for failure to exhaust and will dismiss Blyden's law library claims without prejudice.[19]

### III. CONCLUSION

For the reasons stated, I will grant defendants' motion for summary judgment as to Blyden's claims under 42 U.S.C. § 1983, and dismiss all such claims with prejudice except his law library claims, which I will dismiss without prejudice under § 1997e(a). An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 26th day of August, 2015.

_/s/ Norman K. Moon_
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[19] In any event, Blyden's complaints about the law library and lack of convenient access to Virgin Islands legal materials does not support a constitutional claim of denial of access to the courts. An inmate's merely conclusory pronouncements about a prison's legal assistance program inadequacies cannot support a constitutional claim of denial of access. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, the inmate must identify how each asserted deficiency caused specific harm to his litigation of a particular, nonfrivolous claim, or will do so in the future.[19] *Id.* at 351-53; *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002). Vague and conclusory allegations about mere delays or inconveniences to an inmate's legal work cannot support a denial of access claim. *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993) (holding that inmate stated no constitutional claim when he identified "no specific problem he wished to research and . . . no actual injury or specific harm which has resulted to him by his limited access to the jail library or its limited contents) (internal quotation marks and citation omitted). Blyden does not identify any particular claim he sought to litigate or that he was prevented from obtaining Virgin Islands case law and statutes through the interstate compact coordinator. At the most, he complains about procedural delays in obtaining the legal materials he desired, but he does not present evidence that these delays harmed his efforts to litigate any particular legal challenge to his conviction.